# IN THE UNITED STATES BANKRUPTCY COURT FOR THE
# SOUTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| IN RE: | CHAPTER 11 |
| **FISH & FISHER, INC.** | CASE NO. 09-02747-EE |
| **MERCHANTS AND FARMERS BANK** | |
| VS. | ADVERSARY NO. 11-00027-EE |
| **FISH & FISHER, INC., DEBTOR,** | |
| **FRANK COXWELL,** | |
| **COXWELL & ASSOCIATES, PLLC,** | |
| **SEKCO, INC.,** | |
| **H&E EQUIPMENT SERVICES, INC.,** | |
| **PUCKETT MACHINERY COMPANY,** | |
| **WARING OIL COMPANY, LLC,** | |
| **MCGRAW RENTAL & SUPPLY COMPANY, INC.,** | |
| **UNITED STATES OF AMERICA, AND** | |
| **PRECIOUS MARTIN** | |

| | |
|---|---:|
| Hon. Jeff D. Rawlings | Attorney for |
| Rawlings & MacInnis, P.A. | Merchants & Farmers Bank |
| P.O. Box 1789 | |
| Madison, MS 39130-1789 | |
| | |
| Hon. Kenneth W. Barton | Attorneys for |
| Hon. Paul M. Ellis | Frank Coxwell and |
| Butler, Snow, O'Mara, Stevens & Cannada, PLLC | Coxwell & Associates, PLLC |
| 1020 Highland Colony Parkway, Suite 1400 | |
| Ridgeland, MS | |

Edward Ellington, Judge

### MEMORANDUM OPINION AND ORDER GRANTING *COXWELL'S MOTION TO DISMISS CLAIM OF M&F BANK IN SECOND AMENDED COMPLAINT*

**THIS MATTER** came before the Court on *Coxwell's Motion to Dismiss Claim of M&F*

*Bank in Second Amended Complaint* (the *"Motion to Dismiss"*) (Adv. Dkt. #124)[1] and *Coxwell's Memorandum in Support of Motion to Dismiss Claim of M&F Bank in Second Amended Complaint* (the "*Coxwell Brief*") (Adv. Dkt. #125) filed by Frank Coxwell and Coxwell & Associates, PLLC (together, "Coxwell")[2] in the above-referenced adversary proceeding (the "Adversary"). Merchants & Farmers Bank ("M&F") filed a *Response to Coxwell's Motion to Dismiss Claim of M&F Bank in Second Amended Complaint* (the *"Response"*) (Adv. Dkt. #130) and a *Memorandum of Authorities in Support of Response to Coxwell's Motion to Dismiss Claim of M&F Bank in Second Amended Complaint* (the "*M&F Brief*") (Adv. Dkt. #131). Coxwell filed *Coxwell's Reply Brief in Support of Motion to Dismiss Claim of M&F Bank in Second Amended Complaint* (the "*Reply Brief*") (Adv. Dkt. #132).

The Court has considered the pleadings and the briefs filed by the parties and finds that the *Motion to Dismiss* is well taken and should be granted.

## FINDINGS OF FACT

For purposes of the *Motion to Dismiss*, the Court assumes that the facts alleged by M&F in the *Second Amended Complaint for Declaratory Judgment to Determine Extent, Validity and Priority of Liens and for Other Relief* (Adv. Dkt. # 113) (the *"Second Amended Complaint"*) are true, as follows.

In early 2007, M&F loaned the Debtor, Fish & Fisher, Inc. ("Fish & Fisher"), the total sum

---

[1] Citations to docket entries in the main bankruptcy case, Case No. 09-02747-EE, are cited as "(Dkt. # ____)", and citations to docket entries in this adversary proceeding, Adv. No. 11-00027-EE, are cited as "(Adv. Dkt. #____)".

[2] For brevity's sake, the Court will refer to both Frank Coxwell and Coxwell & Associates, PLLC as "Coxwell."

of $681,000.00. (Sec. Am. Compl. ¶ 3, Exs. A-B). Fish & Fisher, a construction company, executed Commercial Security Agreements granting M&F a security interest in "all accounts receivable whether now owned or hereinafter acquired by Debtor." (Sec. Am. Compl. ¶ 4, Ex. C). M&F filed a UCC Financing Statement (Sec. Am. Compl. ¶ 4) on November 13, 2006, that described the following collateral:

> TXC 256 Hydraulic Excavator serial #KHEXD0850030022 w/19 ft boom and 11 ft arm and thumb equipment #72207-1
>
> all accounts receivable whether now owned or hereafter acquired by Debtor together with all parts, accessions, attachments, equipment and other general intangibles thereto and wherever located

(Sec. Am. Compl. ¶ 4, Ex. C). Fish & Fisher defaulted on its loan payments. As of March 8, 2011, Fish & Fisher owed M&F $450,673.96, an amount that does not include interest, fees, or expenses. (Sec. Am. Compl. ¶ 3). In the meantime, beginning in November, 2007, L&T Construction, Inc. stopped paying Fish & Fisher for labor and materials that Fish & Fisher had supplied for site preparation work. (Sec. Am. Compl. ¶ 11, Ex. G).

After submitting its payment dispute with L&T Construction, Inc. to arbitration, Fish & Fisher received an award of $1,283,351.00 on June 23, 2009. (Sec. Am. Compl. ¶ 5). Fish & Fisher then retained Coxwell as its legal counsel to handle the disbursement of the arbitration proceeds and, for that purpose, deposited all of the proceeds into Coxwell's trust account. According to M&F, Fish & Fisher's claim against L&T Construction, Inc. constituted an "account receivable" subject to M&F's security interest. (Sec. Am. Compl. ¶¶ 5-6).

M&F alleges that Coxwell knew about its lien on the proceeds from the arbitration award before he disbursed the funds. (Sec. Am. Compl. ¶ 21). As proof, M&F attached to the *Second Amended Complaint* a copy of an e-mail dated June 23, 2009, from counsel for M&F to Coxwell,

which states:

> Frank [Coxwell], I understand this ball is in your court now. As you know, the arbitration award is my client's collateral. Please advise as to payment of the award and pdf me a copy of the award.

(Sec. Am. Compl. ¶ 21, Ex. I). Notably, the email does not explain the basis for M&F's claim to the arbitration award. There is no mention of the term "account receivable," the amount of the debt owed to M&F, or the priority of M&F's lien.

Notwithstanding the above e-mail from M&F's counsel, Coxwell did not disburse any of the proceeds from the arbitration award to M&F. (Sec. Am. Compl. ¶ 24, Ex. E). Instead, Coxwell disbursed almost all of the proceeds to other creditors of Fish & Fisher and then returned the remaining amount to Fish & Fisher, all without M&F's knowledge or consent. (Sec. Am. Compl. ¶ 24, Ex. E).

M&F places emphasis upon the fact that Coxwell's disbursements did not take place at the same time. Although Coxwell *immediately* disbursed $1,191,378.13 of the award to other creditors, he only *later* disbursed $91,927.87 to Fish & Fisher. (Sec. Am. Compl. ¶ 24).

On August 7, 2009, M&F and two other creditors filed an involuntary petition for relief against Fish & Fisher under Chapter 7 of the Bankruptcy Code. (Dkt. #1). An order for relief was entered on September 23, 2009. (Dkt. #10). Upon motion of Fish & Fisher, the Court converted the case to a Chapter 11 case on March 2, 2010. (Dkt. #74).

M&F initiated this Adversary on March 9, 2011, by filing a *Complaint for Declaratory Judgment to Determine Extent, Validity and Priority of Liens and for other Relief* (the *"First Complaint"*) (Adv. Dkt. #1). A few weeks later, on March 25, 2011, M&F amended the First Complaint (the *"First Amended Complaint"*) (Adv. Dkt. #25). On August 17, 2011, M&F filed a

*Motion to Amend Complaint* (Adv. Dkt. #101), seeking leave to amend the *First Amended Complaint* to reflect the dismissal of certain parties, to add Coxwell & Associates, PLLC, as a defendant, and to provide a fuller factual bases for its claims. The Court granted the *Motion to Amend Complaint* on August 25, 2011. Thereafter, on August 30, 2011, M&F filed its *Second Amended Complaint*, which is the subject of the *Motion to Dismiss*.

In addition to Coxwell, the *Second Amended Complaint* names as defendants numerous creditors of Fish & Fisher who allegedly received part of the arbitration award. M&F's cause of action against Coxwell is wholly contained in Count III of the *Second Amended Complaint*. M&F claims: (1) that Coxwell "negligently exercised control over the entire amount of the arbitration award" (Sec. Am. Compl. ¶ 23), (2) that a constructive trust was imposed upon the arbitration proceeds for the benefit of M&F (Sec. Am. Compl. ¶ 23), (3) that Coxwell violated the constructive trust (Sec. Am. Compl. ¶ 23), and (4) that Coxwell is liable to M&F for all sums owed M&F by Fish & Fisher. (Sec. Am. Compl. ¶ 23).

## CONCLUSIONS OF LAW

### I.

This Court has jurisdiction of the subject matter and of the parties to this adversary proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A).

### II.

#### A. Rule 12(b)(6) Standard

In the *Motion to Dismiss,* Coxwell asks the Court to dismiss Count III of the *Second*

*Amended Complaint* pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure[3] on the ground that M&F's allegations against him fail to state a claim upon which relief can be granted. Before reaching the merits of the *Motion to Dismiss*, the Court pauses here to resolve a dispute between M&F and Coxwell regarding the appropriate standard for dismissal under Rule 12(b)(6). The standard that M&F urges this Court to apply, according to Coxwell, is "outdated and irrelevant." (Reply Brief at 2). M&F cites in the *M&F Brief* the notice-pleading standard, which is based upon the approach of the United States Supreme Court in *Conley v. Gibson*, 355 U.S. 41 (1957). Under that standard, the Court may grant the *Motion to Dismiss* if "it appears beyond doubt that a plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley,* 355 U.S. at 45-46. Coxwell, on the other hand, cites the Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), which impose a more demanding pleading standard than *Conley's* "notice" pleading.

The Court agrees with Coxwell that *Twombly* and *Iqbal* require closer scrutiny of the allegations in the *Second Amended Complaint* than what M&F urges this Court to apply. The Supreme Court noted in *Twombly* that pleading standards that apply to a Rule 12(b)(6) motion to dismiss arise out of the requirement in Rule 8(a)(2) of the Federal Rules of Civil Procedure[4] that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." To survive such a motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. In contrast, courts interpreted *Conley* as requiring the plaintiff

---

[3] Rule 12(b)(6) of the Federal Rules of Civil Procedure is made applicable to bankruptcy cases by Rule 7012 of the Federal Rules of Bankruptcy Procedure.

[4] Rule 8(a)(2) of the Federal Rules of Civil Procedure is made applicable to bankruptcy cases by Rule 7008 of the Federal Rules of Bankruptcy Procedure.

to plead facts showing only the possibility of a right to relief. In *Twombly,* the Supreme Court revisited the language in its earlier decision in *Conley*, that a complaint should not be dismissed at the pleading stage "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim," *Conley,* 355 U.S. at 45-46. M&F relies upon this same language. The Supreme Court, however, concluded that courts had interpreted the "no set of facts" language in *Conley* too literally. *Twombly*, 550 U.S. at 561-62.

In *Iqbal*, the Supreme Court described application of the "plausibility" standard in *Twombly* as requiring a two-part analysis. First, a court should identify those allegations in the complaint that unlike non-conclusory, factual allegations, are not entitled to the assumption of truth. *Iqbal*, 129 S. Ct. at 1949-50. A pleading that includes "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. In other words, in its evaluation of a pleading, a court may ignore altogether any legal conclusions. Second, a court should determine whether the non-conclusory, factual allegations in the complaint plausibly suggest a claim for relief. *Iqbal*, 129 S. Ct. at 1950. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact). *Twombly*, 550 U.S. at 555. Although Rule 8 does not require "detailed factual allegations," a complaint must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true, nudge the claim across the line from conceivable to plausible. This task is context-specific.

Having clarified the standard that applies to the *Motion to Dismiss*, the Court now turns to M&F's factual allegations in the *Second Amended Complaint* to determine whether they plausibly suggest claims against Coxwell for the imposition of a constructive trust or for negligence under

Mississippi law.

## B. Constructive Trust

Coxwell contends that M&F's allegations in Count III of the *Second Amended Complaint*, even if proved to be true, are insufficient to establish a basis for the imposition of a constructive trust under Mississippi law. Without more, the bald assertion by M&F that he held the arbitration proceeds in a constructive trust for M&F's benefit because he was made aware of M&F's "ownership and lien interest" is insufficient proof of a constructive trust, so says Coxwell. He points to the absence of allegations in the *Second Amended Complaint* either: (1) that he obtained the funds by fraud or by some other act of wrongdoing; (2) that he had a confidential relationship with M&F; or (3) that he has been unjustly enriched.

In support of the *Motion to Dismiss*, Coxwell quotes the definition of a constructive trust set forth by the Mississippi Court of Appeals in *In re Parker*, 13 So. 3d 877, 879 (Miss. Ct. App. 2009), as follows:

> A constructive trust arises by operation of law against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not in equity and good conscience hold and enjoy.

*Parker*, 13 So. 3d at 879-80. Coxwell cites other Mississippi cases that describe the purpose underlying the creation of a constructive trust and the extent of its reach in satisfying that purpose. For example, the Mississippi Supreme Court has held that "[a] constructive trust is a fiction of equity created for the purpose of preventing unjust enrichment by one who holds legal title to property which, under principles of justice and fairness, rightfully belongs to another." *McNeil v. Hester*, 753 So. 2d 1057, 1076 (Miss. 2000); *see also Wright v. O'Daniel*, 58 So. 3d 694, 698 (Miss. Ct. App.

2011). The Mississippi Supreme Court has also held that unless there is a corresponding claim of unjust enrichment, the remedy of a constructive trust is not legally cognizable. *Drew v. Langford*, 666 So. 2d 739, 743 (Miss. 1995) (no constructive trust existed where plaintiff failed to establish that defendant was unjustly enriched).

The Court will separately address each of Coxwell's contentions regarding the absence of allegations in the *Second Amended Complaint* of either fraud, abuse of a confidential relationship, or unjust enrichment. Underlying Coxwell's contention is the assumption that a constructive trust requires proof of at least one of these allegations under Mississippi law. M&F does not directly challenge this assumption.

**1.     Fraud or Act of Wrongdoing**

Coxwell maintains that the bald fact that M&F's counsel notified him of M&F's purported interest in the arbitration proceeds does not establish that he obtained those funds through fraud or other act of wrongdoing. (Coxwell Brief at 4). He asserts that M&F's purported interest in the funds as its collateral could not transform an *express* trust maintained by Coxwell for the benefit of Fish & Fisher into an *implied* trust for M&F's benefit. (Coxwell Brief at 4-5).

M&F counters that the allegations in the *Second Amended Complaint* demonstrate that Coxwell converted the funds under Mississippi law. Specifically, M&F points to allegations that Coxwell exercised dominion and control over M&F's collateral and failed to segregate M&F's collateral. This conduct, according to M&F, satisfies the elements of a conversion claim, which requires "proof of a wrongful possession, or the exercise of a dominion in exclusion or defiance of the owner's right, or of an unauthorized and injurious use, or of a wrongful detention after demand." *Community Bank v. Courtney*, 884 So. 2d 767, 773 (Miss. 2004); *see also Wallace v. United*

*Mississippi Bank*, 726 So. 2d 578 (Miss. 1998).

The Court notes at the outset that neither "convert," "conversion," nor "converting" appears anywhere in the *Second Amended Complaint*. More importantly, there is no allegation by M&F of any "wrongful possession . . . or of an unauthorized and injurious use" of the funds by Coxwell. *Courtney*, 884 So. 2d at 772-73. Instead, M&F alleges in the *Second Amended Complaint* only that Coxwell *negligently* exercised control over the funds. (Sec. Am. Compl. ¶ 23).

> [Coxwell] negligently exercised control over the entire amount of the arbitration award to the exclusion of [M&F] and in defiance of [M&F]'s ownership/lien rights . . . . As a result, [Coxwell is] liable to [M&F] for violating said constructive trust and for all sums due to [M&F] from the Debtor.

(Sec. Am. Compl. ¶ 23). These allegations of negligence are in stark contrast to the allegations by M&F in the *First Amended Complaint*. In the *First Amended Complaint*, M&F specifically alleged that Coxwell was liable for conversion, as follows:

> 27. The actions of Frank Coxwell constituted wrongful, unauthorized and injurious use of the funds by *wrongfully converting the accounts receivable/arbitration proceeds* on which Bank had a lien, thereby making him liable to Bank for conversion of the entire amount.
>
> 28. Frank Coxwell *knowingly* exercised control over this portion of the arbitration award to the exclusion of Bank and in defiance of Bank's ownership/lien rights.

(First Am. Compl. ¶¶ 27-28) (emphasis added).

The *Second Amended Complaint*, however, is the only operative complaint before the Court. *Cf. Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court."). Because the *Second Amended Complaint* does not adopt or incorporate by reference any of the allegations contained in the *First Amended Complaint*, it supersedes the *First Amended Complaint* in its entirety. *Boelens v. Redman Homes, Inc.*, 759 F.2d

504, 508 (5th Cir. 1985). Therefore, the Court finds that M&F has abandoned its allegations of conversion against Coxwell.

However, even if M&F's allegations in the *Second Amended Complaint* could be interpreted as stating a claim for conversion, the Court finds that the *Second Amended Complaint* lacks sufficient factual foundation to meet the plausibility pleading standard set forth in *Twombly* and *Iqbal*. Simply put, M&F failed to allege the required elements of a conversion claim.

M&F draws an analogy between Coxwell's liability for conversion and the liability of a bank for conversion when it has knowledge of a trust but sets off funds in the trust account anyway to satisfy its own debt. *Central Bank of Mississippi v. Butler*, 517 So. 2d 507, 510 (Miss. 1987); *see Lumberton State Bank v. Fortenberry*, 222 So. 2d 384 (Miss. 1969). In *Fortenberry*, for example, the fact that the bank knew that certain funds did not belong to its customer/borrower was controlling in determining whether there was a conversion.

According to M&F, cases in other jurisdictions have similarly imposed conversion liability when a plaintiff's demand for money is ignored by a defendant who has exercised dominion and control over the money inconsistent with the plaintiff's rights. M&F contends that *Grayson v. Bank of Little Rock,* 971 S.W. 2d 788 (Ark. 1988), and *Northeast Bank of Lewiston & Auburn v. Murphy*, 512 A.2d 344, 346 (Me. 1986), are factually analogous. Both cases are outside this jurisdiction and are not binding authority. Even so, the Court will discuss each of these cases in turn.

In *Grayson*, a bank loaned money to the debtor and was granted a security interest in all of the debtor's assets. *Grayson*, 971 S.W.2d at 798. The debtor defaulted on the loans and filed a voluntary petition for relief under Chapter 11. The debtor and the bank then entered into a temporary cash collateral order in which the debtor admitted that the bank held a security interest in all of the

debtor's assets, including any assets acquired post-petition.

During the pendency of the bankruptcy case, counsel for the debtor filed a lawsuit in state court on behalf of the debtor against an insurance company seeking the recovery of insurance premiums that the debtor had overpaid. Meanwhile, the bankruptcy court dismissed the debtor's bankruptcy case and awarded attorney's fees to the debtor's counsel. After the dismissal of the bankruptcy case, the debtor's counsel settled the lawsuit in state court with the insurance company. The attorney kept part of the settlement proceeds for himself as payment of the fees awarded him by the bankruptcy judge and distributed the rest of the settlement proceeds to the bankruptcy trustee and the debtor.

The bank sued debtor's counsel in state court for conversion. The bank claimed that the debtor's attorney had notice of its perfected security interest and of its rights to the settlement proceeds prior to their distribution. The debtor's attorney maintained that he was relieved of any duty to preserve the collateral for the benefit of the bank because the bank did not take the necessary legal steps to gain a possessory interest in the settlement proceeds. The trial court ruled in favor of the bank, holding that the debtor's attorney was liable for converting the portion of the proceeds he kept for himself in payment of his attorney's fees from the bankruptcy case. On appeal, the Supreme Court of Arkansas also ruled in favor of the bank but further held that the debtor's attorney was liable for the entire settlement amount, not just the sum he kept for himself.

In *Murphy,* the Supreme Judicial Court of Maine affirmed a judgment against a debtor's attorney, who was given notice of an order issued by the state court imposing a lien in favor of a bank on any settlement proceeds recovered by the debtor. *Murphy*, 512 A.2d at 346. The trial court found that the debtor's attorney had wrongfully converted the settlement funds when he distributed

the proceeds to himself and others, but not to the bank. *Id.* at 346. On appeal, the debtor's attorney defended his actions on the ground that the entities to whom he disbursed the funds enjoyed priority liens. The Maine Supreme Court found his defense "unconvincing as an after-the-fact justification." *Id.* at 349.

According to M&F, Coxwell is liable for the same reasons the debtor's attorneys in *Grayson* and *Murphy* were liable: Coxwell was hired for the express purpose of disbursing the arbitration proceeds to creditors of Fish & Fisher and in performing this task, intentionally deprived M&F of its priority rights to those proceeds.

In Mississippi, a plaintiff seeking to impose a constructive trust "has an imposing burden." *Simmons v. Simmons*, 724 So. 2d 1054, 1058 (Miss. Ct. App. 1998). "The burden is beyond a mere preponderance of the evidence. Rather, the proponent of such a trust has an obligation to establish the necessary facts by clear and convincing evidence." *Id.* In order to establish conversion liability, there must be an "intent to exercise dominion or control over goods." As stated previously, however, the *Second Amended Complaint* does not allege that Coxwell "intentionally" exercised dominion or control over the arbitration funds. Instead, the *Second Amended Complaint* alleges that Coxwell "negligently exercised control" over the funds. (Sec. Am. Compl. ¶ 23). Negligence, however, is the antithesis of an intentional tort. *Webb v. Jackson*, 583 So. 2d 946, 951 (Miss. 1991).

M&F asserts that the *Second Amended Complaint* satisfies the "intent" element of a conversion claim because intent "is not necessarily a matter of conscious wrongdoing." (Response at 2). This assertion misses the point. The "intent" element of conversion is "an intent to exercise dominion or control over goods which is inconsistent with the true owner's right." *Courtney*, 884 So. 2d at 773. M&F, however, has alleged that Coxwell only "negligently exercised control." (Sec.

Am. Compl. ¶ 23).

Moreover, the cases cited by M&F—*Fortenberry, Grayson,* and *Murphy*— in support of its conversion claim, are factually distinguishable. In *Fortenberry*, the bank engaged in bad-faith manipulative conduct by using funds from an account that it knew represented proceeds from livestock sales to offset the debts of its customer.

> The bank was well aware that these funds were proceeds from the sale of livestock. In fact, the testimony shows that the president of the bank agreed that appellee should conduct the sale on June 21. The bank was well aware of the manipulations of Fortenberry and in fact, it appears that it assisted him in such manipulations by holding checks and debiting other accounts in order that the checks could be covered. The bank knew that the particular funds seized on June 26 did not belong to Fortenberry and that is controlling.

*Fortenberry,* 222 So. 2d at 387-88. Unlike *Fortenberry*, there is no allegation that Coxwell assisted Fish & Fisher in misappropriating funds that he knew rightfully belonged to M&F.

In *Grayson*, the validity and priority of the bank's security interest was never in dispute. The bank had filed a replevin action, and a court had ruled that the bank was entitled to possession of the settlement proceeds at issue. The court went so far as to authorize the circuit clerk to issue an order of delivery. *Grayson,* 971 S.W.2d at 791-92. In the face of this court order, the attorney in possession of the settlement proceeds wrongfully refused the bank's demand to surrender its collateral. *Id.* at 792.

Unlike *Grayson*, Coxwell had no way of knowing the dollar amount of M&F's purported lien (which was substantially less than $1.3 million) or the priority of M&F's purported lien. (Sec. Am. Compl.¶ 24, Exs. E & I). The e-mail that M&F attached as Exhibit I to the *Motion to Dismiss* states in substance only that "the arbitration award is my client's collateral." (Sec. Am. Compl. ¶ 21, Ex. I). The email did not put Coxwell on notice of any court order that established the priority of M&F's

lien. Consequently, M&F did not present Coxwell with any proof of ownership of the funds, which is an essential element of a conversion claim under Mississippi law. *See Evans v. Miss. Dep't of Human Servs.*, 36 So. 3d 463, 477 (Miss. Ct. App. 2010). "It is elementary that ownership is an essential element of conversion." *Courtney*, 884 So. 2d at 772-73.

M&F's reliance on *Murphy* is similarly misplaced. As stated previously, the debtor's attorney who disbursed the settlement proceeds in *Murphy*: (1) was aware of the bank's lien, the validity of which was "not open to dispute"; (2) had agreed that his client would protect the bank's lien; (3) never informed the bank that he had received the settlement proceeds; (4) disbursed a portion of the proceeds to the debtor "in knowing violation" of the bank's superior security interest; and (5) filed a petition for relief under the Bankruptcy Code after the debtor had spent all of the proceeds which he disbursed to her with the instructions that "it was hers to spend." *Murphy,* 512 A.2d at 346, 348. None of these facts is present in this matter.

**2.     Abuse of Confidential Relationship**

In Mississippi, a court may "construct a trust for the benefit of the party whose confidence has been abused." *Davidson v Davidson*, 667 So. 2d 616, 620 (Miss. 1995) (citation omitted). For a "confidential relationship to exist between two person, there must be a relation in which one person is in a position to exercise a dominant influence upon the other." *In re Estate of Parker*, 13 So. 3d 877, 880 (Miss. Ct. App. 2009) (citation omitted). There is no allegation in the *Second Amended Complaint* that a confidential relationship existed between Coxwell and M&F.

**3.     Unjust Enrichment**

Even if the proceeds from the arbitration award amounted to a constructive trust for M&F's benefit, M&F's remedy would be limited to the recovery of any proceeds still held by Coxwell. *See*

*In re Estate of Horrigan*, 757 So. 2d 165, 170-71 (Miss. 1999); *Allgood v. Allgood*, 473 So. 2d 416, 421 (Miss. 1985). There is no allegation in the *Second Amended Complaint*, however, that any of the proceeds remain in Coxwell's trust account. To the contrary, M&F alleges in the *Second Amended Complaint* that Fish & Fisher received the final disbursement of funds from Coxwell. (Sec. Am. Compl. ¶¶ 24-25). A constructive trust cannot be imposed on funds that Coxwell no longer holds.

### C. Negligence

To the extent M&F's allegations may be construed as asserting a negligence claim, the Court notes that an essential element of such a claim is missing from the *Second Amended Complaint*. M&F does not allege that Coxwell owed any legal duty to M&F with respect to holding or disbursing the arbitration proceeds. The Mississippi Supreme Court in *Century 21 Properties v. Corson*, 612 So. 2d 359, 368 (Miss. 1993), held that "[i]t is basic tort law that before one can be found negligent he must owe a duty to the injured party." No attorney-client relationship (or any other fiduciary or confidential relationship) is alleged to have existed between Coxwell and M&F. In the absence of such a relationship, Coxwell owed no legal duty to M&F. *See Blanton v. Prins*, 938 So. 2d 847 (Miss. Ct. App. 2006).

### CONCLUSION

In conclusion, the Court finds that the *Second Amended Complaint* fails to state a claim against Coxwell for imposition of a constructive trust or for negligence under Mississippi law. Accordingly, the Court finds that Coxwell's *Motion to Dismiss* is well taken and should be granted. In addition, the Court certifies its ruling as final under Rule 54(b) of the Federal Rules of Civil Procedure (as made applicable to adversary proceedings by Rule 7054 of the Federal Rules of Bankruptcy

Procedure). *See Section 1120(a)(1) Committee of Unsecured Creditors v. Interfirst Bank Dallas, N.A. (In re Wood & Locker, Inc.)*, 868 F.2d 139, 143-46 (5th Cir. 1989) (interpreting Rule 54(b) in bankruptcy context). Under Rule 54(b), when an adversary proceeding involves multiple parties, "the court may direct entry of a final judgment as to one or more, but fewer than all, . . .parties only if the court expressly determines that there is no just reason for delay." FED. R. CIV. P. 54(b). Here, the Court finds that Rule 54(b) certification is appropriate. *See Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8 (1980) (identifying factors relevant to Rule 54(b) certification). The Court's decision clearly ends Coxwell's involvement in the Adversary. Moreover, M&F's claims against Coxwell are sufficiently separable from M&F's claims against the remaining parties so that it would be unfair to delay an appeal until resolution of the entire Adversary. Accordingly, the Court directs the entry of a final judgment and determines that there is no just reason for delay in the entry of a final judgment, as set forth under Rule 54(b).

**IT IS, THEREFORE, ORDERED** that the *Motion to Dismiss* is hereby granted with prejudice.

**SO ORDERED**.

_____
Edward Ellington
United States Bankruptcy Judge
Dated: March 25, 2012